UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

SCICOM Data Services, Ltd.,                                                    Case No. 13-43894

Debtor.                                                                        Chapter 11 Case

---

**NOTICE OF MOTION AND MOTION FOR ORDER (I) AUTHORIZING DEBTOR TO
SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES AND (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

---

TO:     The Parties in Interest as Specified in Local Rule 9013-3(a)(2).

1.      The above-referenced Debtor moves the Court for the relief requested below and gives notice of hearings.

2.      The Court will hold a hearing on this motion ("Sale Motion") at 10:00 a.m. on September 26, 2013, in Courtroom 7W, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

3.      Any response to this motion must be filed and served not later than September 21, 2013, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).   **UNLESS RESPONSES OPPOSING THE MOTION ARE TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rules 1070-1 and 1073-1.   This is a core proceeding.   The petition commencing the above-captioned chapter 11 case was filed on August 6, 2013 (the "Petition Date").   The case is now pending in this Court.

5.    The relief sought in this Sale Motion is based upon 11 U.S.C. § 105(a), § 363, § 363(b), § 363(f), § 363(m), § 365, § 365(a), § 365(b), § 365(f) and § 365(g) and Fed. R. Bankr. P. 2002(a)(2), 6004, 6004(h), 6006 and 6006(d).  The Debtor proposes to sell substantially all of its operating assets, excluding its real property, and to assign certain related unexpired leases and executory contracts to Venture Solutions, Inc. ("Purchaser").

## GENERAL BACKGROUND

6.    General background about the Debtor is set forth in the Unsworn Declaration of Timothy L. Johnson in Support of First Day Motions [Dkt. No. 7] (the "Johnson Declaration").

## BACKGROUND RELEVANT TO THE RELIEF REQUESTED

7.    As described in the Johnson Declaration, the Debtor was successful for many years, though 2010.  Since that time, the Debtor has been losing money.  Progress has been made in reducing losses, but the progress has not been enough to ensure long term viability.  The Debtor is facing obligations from an underfunded pension plan and from litigation that it will not be able to meet.  To preserve the going concern value of the company, to assure the continuation of service to its customers and to preserve as many jobs as possible, the Debtor has negotiated extensively with the Purchaser regarding the sale of the Debtor's business.  These negotiations have culminated in a Purchase and Sale Agreement (the "Purchase Agreement") annexed to this Sale Motion as **Exhibit A**.

8.    The Debtor has determined, in the exercise of its sound business judgment, that the sale of its assets to the Purchaser pursuant to the Purchase Agreement is appropriate and in the best interests of the Debtor's estate and creditors.  This transaction provides the Debtor's estate with the best opportunity to capture the going concern value of the Debtor's business operations and maximize the recoveries for all constituents.

## PURCHASE AND SALE AGREEMENT

9.      As of the Petition Date, the Debtor has entered into the Purchase Agreement with the Purchaser.  The Purchaser is engaged in a similar business and is well-positioned to incorporate the Debtor's business into its existing business and seamlessly transition the services that the Debtor provides to its customers.

10.      The Purchaser is a good faith purchaser as set forth in 11 U.S.C. §363 (m) in that, among other things: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser did not cause or contribute to the need for the chapter 11 filing by the Debtor; (c) all payments to be made by the Purchaser in connection with the sale have been disclosed; (d) no common identity of directors or controlling shareholders exists between the Purchaser and the Debtor; and (e) the negotiation and execution of the Purchase Agreement was at arms' length and in good faith.  A declaration from the Purchaser or testimony on these points will be provided at the hearing.

### A.      Summary of Terms.

11.      Following is a summary of some of the most significant provisions in the Purchase Agreement.  This summary is not intended to modify or supersede those terms, and to the extent there is any discrepancy, the provisions of the Purchase Agreement control.

| Provision | Summary Description |
|---|---|
| Purchase of Assets (Article II) | On the terms and subject to the conditions set forth in the Purchase Agreement, including the approval of the Bankruptcy Court pursuant to the Sale Approval Order, on the Closing Date, the Seller will sell, transfer, assign, convey and deliver to the Purchaser, free and clear of all Liens, all of the Seller's right, title and interest in and to all of the tangible and intangible assets and properties of every kind and description owned or used by the Seller in its business and wherever located, excluding certain Excluded Assets.  A description of the Purchased Assets is set forth in Purchase Agreement § 2.1. A description of the Excluded Assets is set forth in Purchase |

| | |
|---|---|
| | Agreement § 2.2.  The Excluded Assets include the Debtor's cash and real property. |
| Treatment of Liabilities (Article III) | Certain contracts and leases, as set forth in Schedule 3.1(b), will be assumed by the Debtor and assigned to the Purchaser. Any cure claim associated with any such contract will be determined by the Court and paid by the Debtor.  The Purchaser will assume only certain Assumed Liabilities. |
| Deposit (Article IV) | Purchaser has deposited $500,000. |
| Purchase Price and Earnout Payment (Article IV) | In consideration of the conveyance of the Purchased Assets, the Purchaser will: <br><br> (a) Pay to the Debtor 97% of the balance of the Net Current Accounts Receivable; plus 100% of the book value of the Saleable Inventory; plus 100% of the book value of the Prepaid Assets identified on Schedule 4.2(c), but specifically excluding any Excluded Assets; plus 100% of the book value of the Equipment identified on Schedule 4.2(d); plus $500,000.00; minus outstanding Postage Liability; and minus all Assumed Liabilities identified on Schedule 4.2(g). <br><br> (b) Pay an "Earn-Out Payment" of 5% of the amount of Net Customer Revenue for the first year after closing provided that the Net Customer Revenue exceeds $10 million. 20% of such payment will be paid to the Debtor and the remainder will fund the Employee Success Bonus Program. |
| Closing (Article V) | The closing will take place in accordance with the conditions set forth in Purchase Agreement §§ 5.4 and 5.5 on or before September 30, 2013. |
| Representations, Warranties and Covenants (Articles VI and VII) | The Purchase Agreement contains standard representations and warranties of the parties including as set forth in Purchase Agreement §§ 6 and 7. |
| Covenants (Article VIII) | In addition to standard pre-closing covenants, the Purchase Agreement contains requirements regarding communication with employees and customers. |
| Post-Closing Covenants (Article IX) | In addition to standard post-closing covenants, the Purchase Agreement requires the Purchaser to apply the terms and conditions set forth in Schedule 9.5 to all transactions with an existing customer for at least one year. |
| Employee Success Bonus Plan (Article X) | Each of the Debtor's employees that is employed on a full-time basis on the Petition Date and that remains employed by the Debtor on such basis through the Closing Date will be entitled to a share of a portion of the Earnout Payment. |

12.    In addition, the Purchase Agreement requires the Debtor to enter into several additional agreements with the Purchaser:

    i.  An "Assumption Agreement," substantially in the form of Exhibit B to the Purchase Agreement, pursuant to which, among other things, the Debtor shall assign certain contracts and/or leases to the Purchaser.

    ii.  A "Records Agreement," substantially in the form of Exhibit C to the Purchase Agreement, pursuant to which the Purchaser will provide access to pre-Closing financial, vendor and employee books and records acquired by the Purchaser pursuant to the Purchase Agreement, including electronic records.

    iii.  An "Occupancy Agreement," substantially in the form of Exhibit D to the Purchase Agreement, pursuant to which the Debtor will provide the Purchaser with access to and quiet possession of the Debtor's real property until March 31, 2014, unless the Occupancy Agreement is earlier terminated.

**B.    Sound Business Judgment and Best Interest of the Estate**

13.    The Debtor believes good cause exists to approve the Purchase Agreement. The terms and conditions of the Purchase Agreement are reasonable and will enable the Debtor and its creditors to realize the maximum value for the Purchased Assets.

14.    The Debtor is exercising sound business judgment in proceeding with the sale without holding an auction and such a "private sale" is in the best interests of the estate for three primary reasons:

a. The customers of the Debtor are large companies – banks, health providers and others whose "contracts" with the Debtor are more like "terms and conditions." In general, they are not obligated to deal with the Debtor. At the first suggestion that the Debtor would not be able to provide the services they need, they will seek out an alternative. If they do, the going concern value of the Debtor will be lost. To capture going concern value it is essential to be able to present to each customer a committed buyer capable of continuing the services. An auction process presents uncertainty – the

stalking horse will have "outs" and the identity of the new servicer will be unknown for some time.  If even a few customers flee, the value of the business will decline and could very quickly become liquidation value.

b. Similarly, the uncertainty that an auction would inject into the situation risks destabilizing the Debtor's workforce.  The Debtor's business model includes elements of a professional services firm – the Debtor's customers have developed relationships with and depend on the experience, knowledge and credibility of specific employees.  An extended sale process would increase the anxiety of the employees and would increase the likelihood of attrition.  This, in turn, would undermine the very relationships that provide ongoing value to the Debtor, and would drive down the value of the business.

c. The Purchaser has insisted on a closing by September 30, 2013 to enable it to complete the transition work by mid-November, at which time the Purchaser concentrates on preparing and then delivering critical year-end statements for its customers.  The proposed private sale can be accomplished within this timeframe.

d. During the negotiations, the Debtor was able to negotiate for a higher price in exchange for agreeing to a private sale.  The Debtor obtained a premium of $500,000 above the price then being discussed (which was based on net book value) and an Earnout Payment which will generate approximately $750,000 if revenues in the year following sale are equal to those in the year proceeding the sale.

15.    As set forth in the Johnson Declaration, the Debtor has lost money for a number of years and does not forecast significant improvement.  The Purchaser is a logical party to purchase the Debtor's assets in the limited window of time that the Debtor has to complete a transaction.  The Debtor has not received any offers or credible expressions of interest from other

parties.  In negotiations, the Debtor has been able to obtain a price that is greater than book value and much higher than liquidation value of the Purchased Assets would be.  The transaction offers the best price under the circumstances, taking into account the risks of alternatives and the offered consideration.  The Debtor expects to provide expert testimony in the form of a declaration or testimony as additional support for the conclusion that the Sale is in the best interest of the estate if necessary.

**SALE OF THE ASSETS FREE AND CLEAR OF LIENS**

16.    The proposed sale of the Debtor's assets will be a sale free and clear of all liens, claims, interests and encumbrances.  The following summarizes the nature, extent and amount of the currently known liens, claims, interests and encumbrances.

**A.    Prepetition Liens.**

17.    As of the Petition Date, the Debtor has no secured debt.  Prior to the Petition Date, the Debtor was indebted to BMO Harris Bank, as successor to Century Bank National Association and M&I Marshall & Ilsley Bank.  This indebtedness was secured by a mortgage on the Debtor's real property and a security interest in substantially all of the Debtor's property.  A final payment to BMO Harris was made on July 16, 2013.  Although a release of mortgage has not yet been filed in the property records and a termination has not yet been filed in with the appropriate filing office, the Debtor's indebtedness to BMO Harris has been fully satisfied and BMO Harris has no interest in the Debtor's property.

**B.    Other UCC Filings.**

18.    Data Sales Co. has filed a financing statement covering equipment (a dot matrix printer) it leases to the Debtor for $276 per month.  The Debtor believes this is a true lease.  Therefore, the equipment is not included in the Purchased Assets.  The lease will either be assumed and assigned, or it will be rejected and the equipment returned to the lessor.

C.    **Sale Free and Clear.**

19.    In accordance with Section 363(f) of the Bankruptcy Code, a debtor in possession

may sell property under section 363 "free and clear of any interest in such property of an entity

other than the estate" if one of the following conditions is satisfied:

(1)    applicable nonbankruptcy law permits sale of such property free and clear
of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is
greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding to
accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

20.    Because the Debtor expects it will satisfy one or more of the requirements of

section 363(f), approval of the sale of the Debtor's assets free and clear of all interests is

warranted.

21.    To the extent that any party asserts a lien in the assets to be sold, the Debtor

believes that it will either receive sufficient sale proceeds to satisfy in full such liens or it will

obtain the consent of such parties to the sale of such assets free and clear of all liens, claims and

encumbrances.  If such consent is not obtained, the Debtor requests that the liens, claims and

encumbrances asserted against the affected assets by any creditor be transferred and attached to

the net proceeds from any sale received by the Debtor, subject to the rights, claims, defenses and

objections, if any, of any and all interested parties with respect thereto.

22.    The Debtor proposes to use the proceeds of sale to fund a plan of liquidation to be

filed by the Debtor.

23.     Accordingly, the Debtor requests that the order approving the sale of the assets provide that such sale is free and clear of all liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

24.     In addition, the Debtor requests that an order approving the sale to the Purchaser include the protections as provided in section 363(m).  The Debtor submits, and will demonstrate at the hearing, that the Purchaser does not have an interest clearly adverse to the Debtor, its estate, or its creditors.  Further, the final agreement to be approved is a product of arm's-length, good-faith negotiations, and thus the grant of the requested section 363(m) protections is entirely appropriate under the circumstances.

## ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS

25.     Schedule 3.1(a) to the Purchase Agreement identifies all of the executory contracts and unexpired leases to which the Debtor is a party.  The Debtor will provide separate notice to all such counterparties regarding the amount the Debtor proposes paying to the counterparty to compensate the counterparty for its actual pecuniary loss, if any, as a result of any defaults under the lease or contract (the "Cure Amount") in the event the Purchaser designates such contract or lease on Schedule 3.1(b) to the Purchase Agreement.

26.     The Debtor may seek Court approval to assume and assign any of the contracts and leases set forth on Schedule 3.1(a) and will seek a determination as to the applicable Cure Amount at the hearing or a subsequent hearing.

27.     Schedule 3.1(b) to the Purchase Agreement, which will be delivered to the Debtor by the Purchaser not less than seven (7) Business Days prior to the Sale Hearing, will designate which contracts and leases will be assumed by the Debtor and assigned to the Purchaser (the

"Assumed Contracts").   Schedule 3.1(b) is subject to change through the date that is ten (10) business days after the Closing Date.

28.      Pursuant to Section 541 of the Bankruptcy Code, the Assumed Contracts (as defined in the Purchase Agreement), constitute property of the Debtor's estate that may be sold consistent with section 363 of the Bankruptcy Code.   In accordance with the provisions of section 365 of the Bankruptcy Code, the Debtor may assume and assign the Assumed Contracts and recover value from such assets.   In pertinent part, section 365(f) of the Bankruptcy Code provides:

> (f)(1)   [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
>
> • • •
>
> (2)      The trustee may assign an executory contract or unexpired lease of the debtor only if-
>
> (A)      the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)      adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f).

29.      In connection with the sale of its business operations, the Debtor proposes to sell, assume and assign one or more executory contracts or unexpired leases at or shortly after closing.   The Debtor believes cause exists to approve the sale, assumption and assignment of the Assumed Contracts, and/or others, pursuant to sections 363 and 365(f) of the Bankruptcy Code. The Debtor has determined, in the exercise of its sound business judgment that the sale of its

business operations is in the best interests of the Debtor and its estate.  The Assumed Contracts are an integral part of those business operations.

30.      The proposed assumption and assignment of the Assumed Contracts complies with section 365 of the Bankruptcy Code in all respects.  Upon the assumption and assignment of the Assumed Contracts, the Debtor will promptly cure, except where waived by the counterparty, any and all defaults under the terms of the Assumed Contracts to be assumed, and compensate the corresponding party for its actual pecuniary loss, if any, as a result of such defaults, in each case as determined by the Court at the hearing, or, alternatively, at a subsequent hearing.  In addition, where required, the Purchaser will provide adequate assurance of future performance at such hearing(s).

31.      Accordingly, the Debtor requests authority pursuant to sections 363 and 365(f) of the Bankruptcy Code for the sale, assumption and assignment of the Assumed Contracts to the Purchaser.

## REQUEST FOR RELIEF UNDER BANKRUPTCY RULES 6004(g) AND 6006(d)

32.      Bankruptcy Rules 6004(h) and 6006(d) provide, in substance, that an order authorizing the sale of a debtor's property or assumption/rejection of a lease or contract is stayed for a period of 14 days after entry of the order unless the court orders otherwise.  The Debtor requests that any order approving the relief requested herein be effective immediately, by providing that the 14-day stay is inapplicable.  The failure to consummate the transaction by September 30, 2013 gives the Purchaser the right to terminate the Purchase Agreement.

## NOTICE

33.      Notice of this Sale Motion and the Sale Hearing will be mailed to each entity listed on the creditor matrix maintained pursuant to Local Rule 1007-2, to the entities identified

in Local Rule 9013-3(a)(2), to counterparties to executory contracts and leases, and to the ESOP, which is the holder of all of the shares of stock of the Debtor.

## CONCLUSION

34.    Pursuant to Local Rule 9013-2(a), this Sale Motion is verified and is accompanied by a memorandum of law, a proposed order, and proof of service.

35.    Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call Timothy L. Johnson or Richard Walter whose business addresses are 10101 Bren Road East, Minnetonka, Minnesota 55343 about the factual matters raised in and relevant to this Sale Motion.  Further, the Debtor may call one or more witnesses which the Debtor will identify when their identities are known.

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

A.    Approving the Purchase Agreement;

B.    Authorizing the Debtor to sell substantially all of its assets (other than real estate) free and clear of all liens, claims, interests and encumbrances, which will attach to the proceeds of sale in the same order and priority that existed at the commencement of the case;

C.    Authorizing the Debtor to assume and assign in connection with the above-described sale, those executory contracts and leases identified in the Purchase Agreement free and clear of all liens, claims, interests and encumbrances, which will attach to the proceeds of sale in the same order and priority that existed at the commencement of the case; and

D.    Granting such other and further relief as the Court may deem just and equitable.

FREDRIKSON & BYRON, P.A.

Dated:  August 7, 2013

*/e/ James L. Baillie*
James L. Baillie (#3980)
James C. Brand (#387362)
Sarah M. Gibbs (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
jbaillie@fredlaw.com
jbrand@fredlaw.com
sgibbs@fredlaw.com

PROPOSED ATTORNEYS FOR DEBTOR

6884270_5.doc

## **VERIFICATION**

     I, Timothy Johnson, am the Chief Financial Officer of the Debtor.  Based upon my personal information and belief, I declare under penalty of perjury that the facts set forth in paragraphs 7-18 and 25 of the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated:  August 6, 2013

                                      Timothy Johnson

## EXHIBIT A

**PURCHASE AND SALE AGREEMENT**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

SCICOM Data Services, Ltd.,                                    BKY Case No.  13-43894

        Debtor.                                                           Chapter 11 Case

---

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER (I) AUTHORIZING
DEBTOR TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES AND (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

---

The above-listed debtor ("Debtor"), as debtor-in-possession, moves the Court for entry of

an order (I) authorizing the Debtor to sell assets free and clear of liens, claims, interests and

encumbrances and (II) authorizing the assumption and assignment of unexpired leases and

executory contracts (the "Sale Motion").  The supporting facts are set forth in the verified Sale

Motion and the Unsworn Declaration of Timothy L. Johnson in Support of First Day Motions.

All capitalized terms have the meaning ascribed to them in the Sale Motion.

## <u>ANALYSIS</u>

**I.    A GOING CONCERN SALE WITHOUT AN AUCTION PROCESS IS IN THE
     BEST INTEREST OF THE ESTATE AND ITS CREDITORS.**

The Debtor proposes to sell its business, excluding its real property, as a going concern

pursuant to the terms of the Purchase Agreement.  The proposed sale has been carefully

structured to achieve the maximum price for the assets and to maintain stability and continuity

for the Debtor's customers, it was negotiated in good faith, and all parties in interest will have

received more than adequate notice.  The Court should approve this sale.

Section 363(b)(1) of the Bankruptcy Code requires court approval, after notice and

hearing, for sales outside of the ordinary course of business.    11 U.S.C.  §  363(b)(1).

"Bankruptcy courts have wide discretion in structuring sales of estate assets." *In re Wintz Co.*, 219 F.3d 807, 812 (8th Cir. 2000) (*citing In re Food Barn Stores, Inc.*, 107 F.3d 558, 565 (8th Cir. 1997)). Sales may be accomplished by public or by private sale. Fed. R. Bankr. P. 6004(f)(1). In other circumstances, the debtor in possession may obtain approval of bidding procedures to identify the best offer. *E.g.*, *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300 (Bankr. D. Del. 2001). In some circumstances, the court itself may be the auctioneer. *E.g.*, *In re Food Barn Stores*, *supra*. In still others, the debtor in possession may seek approval of a sale that has already been negotiated. *E.g.*, *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009). There are many types of sales because "the manner of sale is within the discretion of the [debtor in possession.]" *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). The common thread among these many types of sales is that the sale is appropriate if the debtor articulates a sound business justification. *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

In the context of sales of substantially all of a debtor's assets, courts have expanded on this "business judgment" test. Courts consider: (a) whether a sound business reason exists for the proposed sale; (b) whether fair and reasonable consideration is provided; (c) whether the sale has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *E.g.*, *In re Engineering Prods. Co.*, 121 B.R. 246, 249 (Bankr. E.D. Wis. 1990); *In re Condere Corp.*, 228 B.R. 615, 630 (Bankr. S.D. Miss. 1998).

A.     <u>**The Purchase Agreement Is Supported By Sound Business Justifications.**</u>

As set forth in the Sale Motion, the Debtor has sound business justifications for selling the Purchased Assets according to the terms of the Purchase Agreement. So long as this

determination was made in good faith and has a reasonable basis, the Court should defer to the Debtor's business judgment. *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

The Debtor has a reasonable basis for entering into the Purchase Agreement. The Debtor carefully evaluated its business prospects and considered the potential impact that an auction process would have on its customers and the stability of those relationships. In addition, by agreeing to a private sale rather than an auction, the Debtor was able to negotiate for a significant increase in the purchase price -- $500,000 plus an Earnout Payment that could be approximately $750,000. Based on this analysis as set forth in more detail in the verified Sale Motion, the Debtor has determined that the proposed Purchase Agreement is in the best interest of the estate.

**B.     The Purchase Agreement Provides Fair and Reasonable Consideration.**

The Debtor believes that the purchase price is fair and reasonable under the circumstances. The Debtor is not in an enviable position – it has lost money for a number of years and does not forecast significant improvement. The Debtor identified the Purchaser as a logical party to purchase the Debtor's assets and has extensively negotiated the terms of the Purchase Agreement, including the price. As a result of these negotiations, the Debtor has been able to obtain a price that is greater than book value and much higher than liquidation value of the assets would be. If necessary, the Debtor will provide additional support at the Sale Hearing regarding the reasonableness of the consideration.

**C.     The Sale Has Been Proposed and Negotiated in Good Faith.**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). The purpose of such a finding is to facilitate

- 3 -

a safe-harbor determination under section 363(m), which protects purchasers of a debtor's property when the purchase is made in "good faith." 11 U.S.C. § 363(m).

Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This provision serves the important purposes of encouraging good faith transactions and of preserving the finality of the bankruptcy court's order unless stayed pending appeal. *In re Abbotts Dairies*, 788 F.2d at 147.

The Purchaser does not have an interest adverse to the Debtor, its estate, or its creditors. The Purchase Agreement is a product of arm's-length, good-faith negotiations. The Purchaser is entitled to a finding that it has acted in good faith, which is necessary both as an element of approving the sale and to invoke section 363(m) to protect the Purchaser's acquisition.

### D.    The Debtor Has Provided Adequate and Reasonable Notice.

Bankruptcy Rule 2002(a) and Local Rule 2002-1(b)(2) specify the notice requirements for a proposed sale of property of substantially all of the assets of the estate other than in the ordinary course of business: Notice must be served on each entity listed on the matrix referred to in Local Rule 1007-2 and on each additional entity listed in the service list specified in Local Rule 2002-1(b)(1) at least 21 days before the hearing. As will be demonstrated in the certificates of service to be filed in this case, the Debtor will have provided adequate and reasonable notice of the hearing and the substance of the proposed sale.

E.    **Conclusion.**

The proposed sale process is supported by business justifications.  The Debtor has made a reasonable and defensible decision that the Purchase Agreement will provide the best return for the estate.  The sale is consistent with progress towards confirmation of a plan, which will be used to distribute the proceeds of the sale, and dispose of the Debtor's remaining property, including its real property.  All aspects of this transaction have been undertaken in good faith and provide for adequate disclosure to interested parties.  Accordingly, the sale should be approved.

## II.    THE COURT SHOULD AUTHORIZE THE DEBTOR TO ASSUME AND ASSIGN CERTAIN CONTRACTS AND LEASES.

Bankruptcy Code section 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Bankruptcy Code section 365(f)(2) provides the authority for the trustee, or debtor in possession, to assign executory contracts and leases as follows:

> The trustee may assign any executory contract or unexpired lease of the debtor only if –
>
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided . . . .

11 U.S.C. § 365(f)(2).

In considering whether to approve a proposed assumption and assignment of an executory contract or unexpired lease, the court uses a business judgment test.  "Where the trustee's request is not manifestly unreasonable or made in bad faith, the court should normally grant approval."  *Four B. Corp v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) (quoting *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303 (5th Cir. 1985)); *In re Crystalin LLC*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir.

2003).  Assumption and assignment of identified contracts and leases is an integral part of the

Purchase Agreement.  The Debtor's ability to assign the identified contracts and leases is a

condition to closing.  In addition, pursuant to Bankruptcy Code section 365(k), the estate will

have no liability under the assumed and assigned contracts following the assignment to the

purchaser.  The Debtor requests that the Court approve the assumption and assignment of the

executory contracts and unexpired leases that will be assumed as part of the sale.

Whether there exists "adequate assurance of future performance" as required under

Bankruptcy Code section 365(b)(1)(C) involves a factual inquiry, requiring case-by-case

consideration.  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir.

1985).  In the event the other parties to unexpired executory contracts challenge the Purchaser's

ability to provide adequate assurance of future performance, the Purchaser will provide such

parties and/or the Bankruptcy Court with supplemental evidence of its financial ability to

perform executory contracts or unexpired leases to be assumed.

## III.    THE ASSETS MAY BE SOLD FREE AND CLEAR OF LIENS.

The Debtor seeks to sell the assets free and clear of all liens, claims and interests of all

claimants and lienholders.  Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if --
>
> (i)      applicable nonbankruptcy law permits sale of such property
>          free and clear of such interest;
>
> (ii)     such entity consents;
>
> (iii)    such interest is a lien and the price at which such property
>          is to be sold is greater than the aggregate value of such
>          interest;
>
> (iv)     such interest is in bona fide dispute; or

> (v)     such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Any one of the five conditions, including the consent of the lienholders, provides authority to sell free and clear of liens. *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). To the extent a secured creditor or lienholder that receives notice does not file a written objection to the Sale Motion, such party should be deemed to have consented to the sale. *In re Shary*, 152 B.R. 724, 725-26 (Bankr. N.D. Ohio 1993).

The Debtor does not believe that any party has a security interest in the assets. In the event that any exists, its respective liens will attach to the sale proceeds and there will be sufficient sale proceeds to pay such claim in full.

## IV.     THE PROPOSED SALE IS NOT A DE FACTO PLAN.

The Debtor is not attempting to short circuit the requirements of chapter 11 for confirmation of a plan. A proposed sale may be objectionable if the transaction effectively determines the terms of the eventual plan, such as by distributing all of the sale proceeds among the various classes, or restricts parties' voting rights. *See In re General Motors Corp.*, 407 B.R. 463, 495 (Bankr. S.D.N.Y. 2009). The Purchase Agreement in no way undermines the chapter 11 plan process. It simply converts the Debtor's business assets, excluding its real property, into cash. Courts clearly have the power to authorize the sale of substantially all of a debtor's assets. *In re GSC, Inc.*, 453 B.R. 132 (Bankr. S.D.N.Y. 2011); *see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008) ("Chapter 11 bankruptcy proceedings ordinarily culminate in the confirmation of a reorganization plan. But in some cases, as here, a debtor sells all or substantially all its assets under § 363(b)(1) (2000 ed., Supp. V) before seeking or receiving plan confirmation.").

- 7 -

## V.    THE EMPLOYEE SUCCESS BONUS PROGRAM IS NOT PROHIBITED.

The Debtor's employees are critical to the successful transition of the Debtor's business to the Purchaser.  In recognition of the importance of the employees, the Purchaser requires that a portion of the Earnout Payment fund a bonus program for full-time employees who stay with the Debtor through Closing.  This will help preserve the value of the Purchased Assets during the time between the Petition Date and Closing.

Section 503(c) of the Bankruptcy Code prohibits the allowance or payment of "a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business" absent certain findings.  Because this bonus program is available to all full-time employees of the Debtor, the officers of the Debtor are also eligible to receive their share of the bonus pool.  The Debtor's officers are insiders within the meaning of 11 U.S.C. § 101(31).

The Employee Success Bonus Program is not prohibited by 11 U.S.C. § 503(c) and should be approved in connection with the approval of the Purchase Agreement.  First, the employees are not being paid by the Debtor or the estate.  Rather, to the extent the Purchaser's future revenue from existing customers exceeds a certain baseline the Purchaser will transfer money to a third party administrator for distribution to the eligible employees.  The Purchaser is making this bonus fund available to employees to preserve the value of the assets it is buying.  Second, the officers' eligibility is not based on their status as officers, but rather their status as full time employees.  The Purchaser recognizes the importance of maintaining stable operations at all levels within the company.  The Debtor requests approval of the bonus program as provided in the Purchase Agreement.

## CONCLUSION

For all the foregoing reasons, the Debtor respectfully requests that the court grant the

relief requested in the Sale Motion.

Dated:  August 7, 2013                          /e/ James L. Baillie
                                                James L. Baillie (#3980)
                                                Sarah M. Gibbs (#390238)
                                                James C. Brand (#387362)
                                                FREDRIKSON & BYRON, P.A.
                                                200 South Sixth Street, Suite 4000
                                                Minneapolis MN 55402
                                                (612) 492-7000
                                                (612) 492-7077  fax
                                                jbaillie@fredlaw.com
                                                sgibbs@fredlaw.com
                                                jbrand@fredlaw.com
                                                PROPOSED ATTORNEYS FOR DEBTORS

6936019_2.docx

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

SCICOM Data Services, Inc.,                                          Case No. 13-43894
                                                                      Chapter 11 Case
                    Debtor.

---

**ORDER (I) AUTHORIZING DEBTOR TO SELL ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS AND ENCUMBRANCES TO PURCHASER; (II) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND
EXECUTORY CONTRACTS; AND (III) GRANTING OTHER
AND FURTHER RELIEF (SALE APPROVAL ORDER)**

---

This case came before the court on the Debtor's Motion for Order (I) Authorizing Debtor, to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (II) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts ("Sale Motion").[1]

Based on the Sale Motion, all the files, records and proceedings herein, the court being advised in the premises,

**IT IS HEREBY FOUND**:[2]

A.      This court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1070-1.

B.      Venue of this case ("Chapter 11 Case") in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.      Determination of the Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).   The statutory predicates for the relief requested in this order are

---

[1]    All capitalized terms used but not otherwise defined in this order shall have the meanings ascribed to them in the Sale Motion or the Purchase Agreement, as applicable.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

sections 105(a), 363(b), (f) and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

D.     This order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the court expressly finds that there is no just reason for delay in the implementation of this order, and expressly directs entry of judgment as set forth in this order.

E.     On August 6, 2013, the Debtor filed the Sale Motion and served copies of the Sale Motion in compliance with Local Rule 2002-1.  On **[_____, 2013]**, the Debtor served the Notice to Counterparties to Unexpired Leases and Executory Contracts That May Be Assumed and Assigned (the "Notice of Cure Amount") on the counterparties to such leases and contracts.

F.     Based upon the foregoing and the certificates of service filed with the court, due, proper, timely, adequate and sufficient notice of the Sale Motion and the proposed assumption and assignment of the Assumed Contracts has been provided in accordance with section 102(1), section 363(b) and section 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and no other or further notice of the Sale Motion, the proposed assumption and assignment of the Assumed Contracts or the entry of this order is required or necessary.

G.     All parties in interest, including, without limitation, all parties who claim an interest in or lien upon the Purchased Assets, all shareholders of the Debtor, all federal, state and local environmental authorities, and all U.S. or foreign federal, state and local governmental taxing authorities who have, or as a result of the sale of Purchased Assets pursuant to the Purchase Agreement (the "Sale") may have, claims, contingent or otherwise against the Debtor,

have been given a reasonable opportunity to object and be heard regarding the relief requested in

the Sale Motion.  All objections to the Sale Motion were resolved, withdrawn or overruled at the

Sale Approval Hearing.

H.     As demonstrated by the testimony or other evidence proffered or adduced at the

Sale Approval Hearing, the Purchase Agreement was based on the experience and sound

business judgment; there was sound business reasons for the proposed sale; fair and reasonable

consideration is provided and the sale was proposed and negotiated in good faith.

I.     No other person or entity or group of entities has offered to purchase the

Purchased Assets for greater economic value to the Debtor's estate than the Purchaser.

J.     The purchase price as set forth in the Purchase Agreement, including the Earnout

Payment, if any (the "Purchase Price"), for the Purchased Assets is fair and reasonable, and

constitutes reasonable consideration and reasonably equivalent value (as those terms are defined

in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and

section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession or the District of Columbia.  Approval of the

Purchase Agreement and the Sale of the Purchased Assets in accordance with this order and the

Purchase Agreement are in the best interests of the Debtor's estate, creditors and other parties in

interest.  The terms of the Purchase Agreement were negotiated at arms'-length and are fair and

reasonable.

K.     The Purchase Agreement was not entered into for the purpose of hindering,

delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession or the District of Columbia.  Neither the Debtor nor the

Purchaser is entering into the transactions contemplated by the Purchase Agreement fraudulently

3

for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims.

L.      The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the Sale of the Purchased Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization and without an auction process, in that, among other things:

a.      To maximize the value of the Purchased Assets, the Debtor's customers needed assurance regarding the identity of the Purchaser.  An auction process or lengthy plan process would have created uncertainty and may have resulted in the loss of customers and a decrease in the value of the Purchased Assets.

b.      Claims against the Debtor's estate will be minimized as a result of the prompt consummation of a sale of the Purchased Assets.  The Purchaser will be assuming certain Assumed Liabilities.  To the extent that the Purchaser assumes the Assumed Liabilities, the holders of such Assumed Liabilities will have no further recourse against the Debtor or its estate and the rights of the holders of such claims to pursue the Debtor or its estate for liability arising from the Assumed Liabilities will be extinguished.

c.      The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for the Debtor, as it does not and does not propose to:  (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor;  (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

4

M.      The Debtor (a) has full corporate or other power to execute, deliver and perform

its obligations under the Purchase Agreement and all other documents contemplated by the

Purchase Agreement or entered into in connection with the Purchase Agreement, and the Sale of

the Purchased Assets by the Debtor having been authorized by the Debtor's Board of Directors

shall be deemed to have been duly and validly authorized by all necessary corporate or similar

action, no vote or other action by equity security holders shall be necessary, and (b) has taken all

action necessary to authorize and approve the Purchase Agreement and such other documents

contemplated by the Purchase Agreement and the consummation by it of the transactions

contemplated by them or entered into connection with them.  No equity security holder or third-

party approvals, other than those expressly provided for in the Purchase Agreement, if any, are

required by the Debtor to consummate such transactions.

N.      The Debtor is authorized and directed to sell and transfer the Purchased Assets

free and clear of all Liens (as that term is defined in the Purchase Agreement) because it has

satisfied the requirements of section 363(f) of the Bankruptcy Code.

O.      Except for the Assumed Liabilities and except as otherwise provided in the

Purchase Agreement, the transfer of the Purchased Assets to the Purchaser, and assumption and

assignment to the Purchaser of the Assumed Contracts, will not subject the Purchaser to any

liability whatsoever with respect to the operation of the Debtor's businesses prior to the Closing

Date, including, without limitation, any liability arising from any of the following: (a) any

employment or labor agreements, consulting agreements, severance arrangements, change in

control agreements or other similar agreements to which the Debtor is or was a party; (b) any

pension, welfare, compensation or other employee benefit plans, agreements, practices, and

programs of the Debtor, including the ESOP or the Pension Plan; (c) the cessation of the

5

Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect to them that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act; (d) workmen's compensation, occupational disease, unemployment, or temporary disability insurance claims, (e) environmental liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health and safety requirements; (f) any bulk sales or similar law, and (g) any litigation by or against the Debtor.

P.    Those holders of Liens against the Debtor, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. The Debtor has met the requirements of section 363(f)(5) with respect to all other holders of Liens as such Lien holders will have their Liens, if any, against the Debtor, its estate or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges a Lien in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess.

Q.    The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its

6

estate and its creditors, if the sale of the Purchased Assets to the Purchaser, the assumption of

liabilities and obligations as set forth in the Purchase Agreement by the Purchaser and the

assignment of the Assumed Contracts were not free and clear of all Liens including, but not

limited to, successor liability.

R.      The Purchase Agreement was negotiated, proposed and entered into by the parties

in good faith, from arm's-length bargaining positions and without collusion.  The Debtor has

followed in good faith the procedures for notice and sale of the Purchased Assets.  The Purchaser

is not an "insider" or "affiliate" of the Debtor (as each such term is defined in the Bankruptcy

Code).  Neither the Debtor nor the Purchaser has engaged in any conduct that would prevent the

application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n)

of the Bankruptcy Code to the Sale and the transactions contemplated by the Purchase

Agreement.  Specifically, the Purchaser has not acted in a collusive manner with any person and

the aggregate price paid by Purchaser for the Purchased Assets was not controlled by any

agreement among potential bidders.  The Purchaser is entitled to the protections afforded under

section 363(m) of the Bankruptcy Code because the Purchaser is a good faith purchaser in that,

*inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party

interested in acquiring the Purchased Assets; (b) the Purchaser did not cause or contribute to the

need for the chapter 11 filing by the Debtor; (c) all payments to be made by the Purchaser in

connection with the Sale have been disclosed; (d) no common identity of directors or

shareholders exists between the Purchaser and the Debtor; and (e) the negotiation and execution

of the Purchase Agreement was at arms' length and in good faith.

S.      Lighthouse Management Group, Inc., acted as the Debtor's advisor for the sale of

the Purchased Assets and worked with the Debtor to negotiate and finalize the Purchase

Agreement and the conveyance of the Purchased Assets to the Purchaser.  To the extent that

Lighthouse Management Group, Inc., or any other Person is entitled to any fees in connection

with the negotiation or consummation of the Sale, the Purchaser shall not be liable in any way

for such fees.

       T.      In the absence of a stay pending appeal, if any, if the Closing occurs at any time

after entry of this order, then, with respect to the Purchase Agreement, the Purchaser, as a

purchaser in good faith of the Purchased Assets, shall be entitled to the protections of

section 363(m) of the Bankruptcy Code if this order or any authorization contained in this order

is reversed or modified on appeal.

       U.      The Debtor is the sole and lawful owner of the Purchased Assets.  Effective as of

the Closing, the transfer of the Purchased Assets is or will (a) be legal, valid and effective

transfers of property of the Debtor's estate to the Purchaser, as more particularly set forth in the

Purchase Agreement, and (b) vest the Purchaser with all right, title, and interest of the Debtor

and the Debtor's estate in and to the Purchased Assets free and clear of all Liens under

sections 363(f) and 105 of the Bankruptcy Code.

       V.      Adequate notice and opportunity to be heard was provided to parties to executory

contracts and unexpired leases to be assumed and assigned pursuant to this order.  Further,

parties received adequate notice and an opportunity to object to the amount of any cure owed by

the Debtor's estate on account of any executory contract or unexpired lease to be assumed and

assigned to the Purchaser under the Purchase Agreement.

       W.      The Debtor has demonstrated that it is an exercise of its sound business judgment

to assume and assign the Assumed Contracts, as defined in the Purchase Agreement and

described on <u>Schedule 3.1(b)</u> to the Purchase Agreement, including any amendments or

modifications to such <u>Schedule</u> as agreed to by the Debtor and the Purchaser pursuant to the Purchase Agreement, in connection with the consummation of the Sale of the Purchased Assets. The assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its estate, its creditors and its equity security holders.  The Assumed Contracts being assigned to the Purchaser as set forth in the Purchase Agreement are an integral part of the Debtor's businesses being purchased by the Purchaser and, accordingly, such assumption and assignment of Assumed Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

   X. All amounts which the Debtor or the Purchaser are required to pay in connection with the assumption and assignment of the Assumed Contracts are as follows:  The Debtor has obtained a waiver or paid or will pay all amounts, if any (the "Cure Amounts"), due or owing under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to (a) cure any defaults under the Assumed Contracts or (b) pay all actual or pecuniary losses that have resulted from such defaults (except with respect to those liabilities expressly assumed by the Purchaser pursuant to the Purchase Agreement).  The Cure Amounts are as follows:  _____. Accordingly, the Debtor has satisfied the requirements of sections 365(b)(1)(A) and (B) and section 365(f)(2)(A) of the Bankruptcy Code.  The Assumed Contracts are unexpired leases or executory contracts within the meaning of the Bankruptcy Code.  The promise of the Debtor to pay the Cure Amounts and the Purchaser's promise to perform the obligations under the Assumed Contracts after the Closing shall constitute adequate assurance of its future performance under the Assumed Contracts specified in this order being assigned to it within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

Y.      The assumption and assignment of the Assumed Contracts is integral to the Purchase Agreement and is in the best interests of the Debtor and its estate, creditors and equity security holders and represents the exercise of the Debtor's sound business judgment.  Any objections to the assumption and assignment of any of the Assumed Contracts to the Purchaser are overruled.  Any objections to the Cure Amounts associated with such Assumed Contracts and set forth in the Notice of Cure Amount are resolved as set forth in this order.  To the extent that any counterparty failed to timely object to (a) the proposed assumption and assignment of the applicable Assumed Contract or (b) the Cure Amount associated with the applicable Assumed Contract, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignments of its respective Assumed Contract to the Purchaser.

Z.      Unless such liabilities constitute Assumed Liabilities of the Purchaser pursuant to the Purchase Agreement, the transfer of the Purchased Assets does not and will not subject the Purchaser to any liability for Liens against the Debtor or its estate under the laws of the United States, any state, commonwealth, territory or possession thereof or the District of Columbia applicable to such transactions by reason of such transfer of the Purchased Assets.

AA.      Neither the Purchaser nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (a) be a successor (or other such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the Purchase Agreement); (b) have, *de facto* or otherwise, merged with or into the Debtor; (c) be a mere continuation of the Debtor or its estate (and there is no continuity of enterprise between the Purchaser and the Debtor); or (d) be holding itself out to the public as a continuation of the Debtor.  The Purchaser is not acquiring or assuming any liability, warranty or

other obligation of the Debtor, except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities.

BB.    The Debtor has good, valid and marketable title to all of the Purchased Assets. The Purchased Assets are to be transferred free and clear of any and all Liens.  All of the Purchased Assets are, or will on the date of Closing, be owned by the Debtor and will be transferred under the Purchase Agreement.

CC.    The Employee Success Bonus Program is not prohibited by section 503(c) of the Bankruptcy Code.  The funding for the Employee Success Bonus Program is not property of the estate and any insider's eligibility for the Employee Success Bonus Program is not based on his or her status as an insider.  Furthermore, the Employee Success Bonus Program preserves the value of the Debtor's assets and is necessary and reasonable under the circumstances.  Alerus Financial, N.A., is qualified and approved to be the Employee Success Bonus Program Administrator.

**IT IS ORDERED:**

<u>**General Provisions**</u>

1.    The Sale Motion is granted to the extent provided in this order.

2.    All objections to the Sale Motion or the relief requested in the Sale Motion that have not been withdrawn, waived, or settled, including all reservations of rights which are not otherwise provided for by this order, are overruled on the merits.

<u>**Approval of the Purchase Agreement**</u>

3.    Each and every term of the Purchase Agreement and all other ancillary documents is approved.

4.      The Sale of the Purchased Assets to Purchaser pursuant to the Purchase
Agreement is authorized under section 363(b) of the Bankruptcy Code and the entry of the
Debtor into the Purchase Agreement is approved.  The proceeds from the sale of the Purchased
Assets shall be paid directly to the Debtor by wire transfer, except as otherwise specifically
provided in the Purchase Agreement with respect to the Earnout at Section 4.6(c)(i).  The Debtor
is authorized to make the Final Payment to the Purchaser if, and to the extent, required under the
Purchase Agreement.

5.      The Debtor, through any corporate officer, is authorized and directed to execute
and deliver, and empowered to fully perform under, consummate, implement and close the
Purchase Agreement, together with all additional instruments and documents that may be
reasonably necessary or desirable to implement such agreements, including taking any actions
that otherwise would require further approval by equity security holders or its Board of Directors
(without the need of obtaining such approvals) and to take all further actions as may be
reasonably requested by the Purchaser for the purpose of assigning, transferring, granting,
conveying and conferring to the Purchaser, or reducing to its possession, any or all of the
Purchased Assets, or as may be necessary or appropriate to the performance of the obligations of
the Debtor under the Purchase Agreement, including effectuating amendments to the Purchase
Agreement.  All Persons necessary to effect the transactions contemplated by the Purchase
Agreement are hereby ordered to execute any and all documents necessary to effect such
transactions.  If any Person fails to comply with the provisions of this paragraph 5 prior to the
Closing Date, such Person (or Persons, as the case may be) shall nonetheless be deemed bound to
any and all documents necessary to effect the transactions contemplated under the Purchase
Agreement.

12

6.      The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this order.

### Transfer of the Purchased Assets

7.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser, in accordance with the Purchase Agreement, and such transfer shall constitute a legal, valid, binding, and effective transfer of the Purchased Assets and shall vest Purchaser with title to the Purchased Assets, free and clear of all Liens, including, without limitation, security interests, pledges, mortgages, liens (as defined in section 101(37) of the Bankruptcy Code, and including, but not limited to, mechanics', materialmens', and other statutory or consensual liens), financing statements, obligations, demands, guaranties, options, rights (including, but not limited to, rights of first refusal, rights of way and rights of recovery), contractual commitments, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets and all debts arising in any way in connection with any acts of the Debtor), easements, encumbrances, personal injury and other tort claims (including, without limitation, with respect to any products sold by the Debtor), covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, judgments, orders, and decrees of any court or governmental entity, interests, successor, transferee, products liability, environmental, tax and other liabilities and claims of any kind or nature, any claims

13

arising under the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, *et seq.*, or any collective bargaining agreements or other applicable law, and Liens and interests of equity security holders (as defined in section 101(17) of the Bankruptcy Code), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, whether arising in connection with the transactions authorized by this order, and whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, except as otherwise set forth in the Purchase Agreement. All such Liens released, terminated, and discharged as to the Purchased Assets shall attach to the sale proceeds with the same validity, force and effect which they now have as against the Debtor, the estate, or the Purchased Assets. The sole and exclusive right and remedy available to holders of Liens, purported creditors, equity security holders, and parties in interest shall be a right to assert Liens against the Debtor's estate.

8. All Persons (including, but not limited to, the Debtor, creditors, equity security holders, including, without limitation, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees of them, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Purchased Assets or the Purchaser and its successors or assigns as alleged successor or otherwise with respect to any Liens of any kind and nature with respect to the Purchased Assets, except for Assumed Liabilities. If the proposed Sale fails to close for any reason, then Liens shall continue against

the Purchased Assets unaffected by this order.  The Purchaser has any and all rights, claims, defenses and offsets held by the Debtor and the estate with respect to Assumed Liabilities.

9.      Except for Assumed Liabilities as set forth in the Purchase Agreement, the transfer of the Purchased Assets pursuant to this order shall not subject the Purchaser to any liability with respect to any obligations incurred in connection with, or in any way related to the Purchased Assets, prior to the date of Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.  The sole and exclusive right and remedy available to any Person who asserts any Lien or other liability with respect to any obligations incurred in connection with, or in any way related to the Purchased Assets, prior to the date of Closing or by reason of the Sale shall be a right to assert such Lien or other liability against the Debtor's estate.

**Assumption and Assignment to Purchaser of Assumed Contracts**

10.      Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Purchase Agreement, of the Assumed Contracts as specified at Closing is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect to the assumption are deemed satisfied.

11.      The Debtor is authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective as of the Closing of the Sale, the Assumed Contracts free and clear of all Liens, other than the Assumed Liabilities, and

(b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts specified in this order to the Purchaser.

12.    With respect to the Assumed Contracts: (a) each Assumed Contract is an unexpired lease or executory contract under section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtor may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitutes an unenforceable anti-assignment provision which is void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of each Assumed Contract have been satisfied; and (e) the Assumed Contracts shall be transferred and assigned to, and following the Closing remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in any Assumed Contract (including those of the type described in sections 365(b)(2), (c)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions assignment or transfer.

13.    Each of the Assumed Contracts specified in this order shall, upon assignment to the Purchaser, be deemed to be valid and binding on the Purchaser and in full force and effect and enforceable in accordance with its terms, and following assignment, the Debtor and the estate shall be relieved of, pursuant to section 365(k) of the Bankruptcy Code, any liability for any breach of the Assumed Contracts occurring after such assignment.

14.    Each non-debtor party to an Assumed Contract specified in this order is barred and enjoined from asserting against the Purchaser, the Debtor or the Debtor's estate (a) any default existing as of the date of the Sale Hearing if such default was not raised or asserted in a timely manner prior to the entry of this order or (b) any objection to the assumption and assignment of such non-debtor party's Assumed Contract or the Cure Amount, if any, of which the non-debtor party was given notice prior to the Sale Hearing.    The assignment of each Assumed Contract to the Purchaser will not cause a default or otherwise allow the non-debtor party to terminate or adversely affect the Purchaser's rights under the Assumed Contract.    Unless expressly provided in the Purchase Agreement, in no event shall the Purchaser be liable for any Cure Amounts or pre-Closing liabilities arising from or related to the Assumed Contracts with the exception of the Assumed Liabilities.

15.    All defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the satisfaction of the terms and conditions of the Purchase Agreement and the assignment (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtor by payment of the applicable Cure Amounts (as set forth on the Notice of Cure Amount or by mutual agreement among the Debtor and the non-debtor party to such Assumed Contract or as set forth in this order) ten (10) Business Days after the Closing or as soon thereafter as practicable, and the Purchaser shall have no liability or obligation with respect to defaults, breaches or other obligations incurred, arising or accruing prior to the assignment, except as otherwise expressly provided in the Purchase Agreement.    The payment of the applicable Cure Amounts, in accordance with the Purchase Agreement, shall (a) effect a cure of all defaults existing thereunder as of the date that such Assumed Contract is assumed and

17

(b) compensate for any actual pecuniary loss to such non-debtor party resulting from such default. To the extent that any non-debtor party to an Assumed Contract did not object timely to its Cure Amount, such non-debtor party is deemed to have consented to such Cure Amount and the assignment of its Assumed Contract to the Purchaser.

16.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption, assignment, or transfer of the Assumed Contracts.

17.     The Purchaser's promise to perform the obligations under the Assumed Contracts after assignment shall constitute adequate assurance of its future performance under the Assumed Contracts specified in this order being assigned to it within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

18.     Upon assignment of the Assumed Contracts to the Purchaser, no default shall exist under any Assumed Contract and no non-debtor party to any Assumed Contract shall be permitted to declare a default by or against the Purchaser under such Assumed Contract or otherwise take action against the Purchaser as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Assumed Contract. Upon entry of this order and assumption and assignment of the Assumed Contracts, the Purchaser shall be deemed in compliance with all terms and provisions of the Assumed Contracts.

19.     Notwithstanding anything to the contrary in this order, no executory contract or unexpired lease will be assumed and assigned unless and until designated by the Purchaser as an Assumed Contract in accordance to the provisions of the Purchase Agreement.

20.     The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or

of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

## Additional Provisions

21.     All of the terms of the Employee Success Bonus Program, as set forth in the Purchase Agreement, are approved.   Alerus Financial, N.A., is approved as the Employee Success Bonus Program Administrator.   The Purchaser's payment of a portion of the Earnout Payment directly to the Employee Success Bonus Program Administrator, as set forth in the Purchase Agreement, is approved.

22.     The Purchaser's Master Services Agreement, as set forth in Schedule 9.5 to the Purchase Agreement, shall constitute a contract between, and be binding upon, the Purchaser and each Customer with respect to each transaction between the Purchaser and such Customer following the Closing as provided in the Purchase Agreement.

23.     The Purchaser undertakes the transaction contemplated by the Purchase Agreement in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided in this order to consummate the Sale shall not affect the validity of the Sale to the Purchaser.  The Purchaser is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

24.     The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement (a) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the other laws of the United States, any state, territory,

19

possession or the District of Columbia and (b) is fair and reasonable and may not be avoided

under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

25.     Neither the Purchaser nor its Affiliates shall be deemed, as a result of any action

taken in connection with the purchase of the Purchased Assets, to: (a) be a successor (or other

such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as

expressly stated in the Purchase Agreement); (b) have, *de facto* or otherwise, merged with or into

the Debtor; (c) be a mere continuation of the Debtor or its estate (and there is no continuity of

enterprise between the Purchaser and the Debtor); or (d) be holding itself out to the public as a

continuation of the Debtor.

26.     Each of the Debtor's creditors is hereby authorized and directed to execute such

documents and take all other actions as may be reasonably necessary to release such creditor's

Liens in the Purchased Assets, if any, as such Liens may have been recorded or may otherwise

exist.  If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*,

or other documents or agreements evidencing any Liens in, against or upon the Purchased Assets

prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties,

and has not executed termination statements, instruments of satisfaction, releases of all Liens

which the Person has with respect to the Purchased Assets, then on the Closing Date, or as soon

as possible thereafter, (a) the Debtor is hereby authorized and directed to execute and file such

statements, instruments, releases and other documents on behalf of the Person with respect to the

Purchased Assets, and (b) the Purchaser is hereby authorized on behalf of each of the Debtor's

creditors, to file, register, or otherwise record a certified copy of this order, which, once filed,

registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens

in, against, or upon the Purchased Assets of any kind or nature whatsoever.

27.     All Persons that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date, or as otherwise directed by Purchaser, with the Liens of such Person to be satisfied solely from the proceeds of the Sale.

28.     The Purchaser is not a successor to the Debtor or the estate by reason of any theory of law or equity.  The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor or the estate arising under or related to the Purchased Assets or other assets, operations, activities, or businesses of the Debtor other than for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided for in this order and in the Purchase Agreement, the Purchaser shall not be liable for any Liens, including any theory of successor or vicarious liability, of any kind or character whether known or unknown as of the date of Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Sale, the Debtor or the estate or any obligations of the Debtor or the estate arising prior to the date of Closing, including, but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets or the other assets, operations, activities, or businesses of the Debtor.

29.     Subject to the Purchase Agreement, this order (a) is and shall be effective as a determination that, at Closing, all Liens (except Assumed Liabilities) existing as to the Purchased Assets prior to the date of the Closing have been and are unconditionally released, discharged and terminated as to the Purchased Assets, and that the conveyance described in this order has been effected, (b) is and shall be effective to cause all Liens (except Assumed Liabilities) to attach to and be perfected in the proceeds of the Sale of the Purchased Assets, in the order of their priority, with the same validity, force and effect which they now have as

against the Purchased Assets, without the need to file any financing statements or other evidence of perfection, and (c) upon payment of required recording fees is binding upon and governs the acts of all Persons including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

30.     This court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of the Purchase Agreement, all amendments to the Purchase Agreement, any waivers and consents under the Purchase Agreement, and each of the agreements executed in connection with the Purchase Agreement, (b) compel delivery of the Purchased Assets to the Purchaser, (c) resolve any disputes arising under or related to the Purchase Agreement and related agreements, except as otherwise provided in the Purchase Agreement and related agreements, (d) enjoin and adjudicate the assertion of any Liens against the Purchaser or the Purchased Assets, and (e) interpret, implement and enforce the provisions of this order.

31.     As of the Closing, all agreements and all orders of this court entered prior to the date of this order shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this order and the Purchase Agreement.

32.     Nothing contained (a) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Case, (b) the order of confirmation confirming any plan of reorganization (or liquidation), (c) any order dismissing the Chapter 11 Case or converting it to a chapter 7 liquidation or (d) any order appointing an examiner or trustee in the Chapter 11 Case shall

22

conflict with or derogate from the provisions of the Purchase Agreement or the terms of this order and no such plan or order shall discharge the obligations of the Debtor under this order or the Purchase Agreement or any documents or agreements delivered in connection with them.

33.     The terms and provisions of the Purchase Agreement, together with the terms and provisions of this order, shall be binding in all respects upon, and inure to the benefit of, the Purchaser, the Debtor, the Debtor's estate, any of the Debtor's Affiliates, successors and assigns, the Debtor's creditors, equity security holders, including, but not limited to, minority equity security holders of the Debtor, and third parties, including, but not limited to, Persons asserting a Lien against or interest in the Debtor's estate or any of the Purchased Assets to be sold to the Purchaser pursuant to the Purchase Agreement or any Persons that are party to any Assumed Contracts specified in this order or in a separate order, and their respective successors and assigns.  If a trustee or examiner is subsequently appointed in this Chapter 11 Case, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this order. This order and the Purchase Agreement shall not be subject to rejection pursuant to section 365 of the Bankruptcy Code or otherwise.

34.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties to them in accordance with their terms without further order of this court, provided that any such modification, amendment or supplement is either not material or is not less favorable to the Debtor and its estate.  In the event a modification is material and less favorable to the Debtor and its estate, the Debtor shall file and serve a notice of such material modification.  If no party in interest objects within five (5) Business Days, the modification shall be deemed approved and the court may enter any such further order as may be necessary.

35.     The failure specifically to include any particular provisions of the Purchase Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the court that the Purchase Agreement be authorized and approved in its entirety.

36.     Upon Closing, the Debtor and its estate shall be deemed without further action or order of the court to have released and discharged the Purchaser and its affiliates, and their respective officers, directors, representatives, agents, attorneys, investment bankers, and professionals of and from any causes of action, legal or equitable, suits, debts, covenants, contracts, agreements, judgments, executions, claims, and demands whatsoever whether known or unknown, including in connection with the Purchase Agreement and the Sale of the Purchased Assets, except for obligations arising in this order or under the Purchase Agreement.

37.     The provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of this order for fourteen (14) days are waived, and this order shall be effective immediately upon entry.

38.     To the extent that this order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this order shall govern.


Dated:                                        _____
                                              Michael E. Ridgway
                                              United States Bankruptcy Judge


6936973_4.doc